10 P.3d 358 (2000)
141 Wash.2d 731
STATE of Washington, Respondent,
v.
Alonzo BRADLEY, Appellant.
No. 68320-4.
Supreme Court of Washington.
Argued May 16, 2000.
September 28, 2000.
Nielsen, Broman & Associates, David Bruce Koch, Seattle, for Appellant.
Norm Maleng, Prosecutor, Brian M. McDonald, James Whisman, Deputy Prosecutors, for Respondent.
TALMADGE, J.
We determine in this case the proper test for use of force by a person in self-defense to the actions of a correctional officer. Because we believe the circumstances of individuals using force in self-defense against correctional officers are analogous to the situation of persons resisting arrest, we hold a person may claim self-defense and use force to resist only when that person is in actual, imminent danger of serious injury. We affirm Alonzo Bradley's conviction for custodial assault pursuant to RCW 9A.36.100(1)(b).

ISSUE
When a person claims to be using force in self-defense to the actions of a correctional officer, must the person show he or she was in actual, imminent danger of serious injury, or is it sufficient to show only that he or she *359 reasonably believed harm was imminent to establish self-defense?

FACTS
On May 15, 1997, Alonzo Bradley was detained at the King County Jail for probation violations on felony drug charges, assault in the second degree, investigation of assault, failing to appear on a resisting arrest charge, and telephone harassment. His criminal history included convictions for possession and possession with intent to deliver controlled substances, and assault in the second degree with a deadly weapon. At approximately 10:30 p.m. that evening at shift change for the jail, Bradley complained to Correctional Officer Glenn Redman of stomach pains and requested to see a nurse.[1] Redman let Bradley out of his cell, and Bradley went to sit on nearby stairs. Bradley did not appear to Redman to be in immediate need of medical assistance, so he asked Bradley to return to his cell. He told Bradley he would summon a nurse at the end of the shift change period. Bradley refused repeated requests to return to his cell, even after at least two other correctional officers arrived to urge him to do so. Bradley testified he was physically unable to stand and walk back to his cell. 3 Report of Proceedings at 43 ("I said I can't. My legsat that time I lost all motor skills in my legs.").
Finally, the supervisor, Sergeant Kim Snodgrass, arrived. As supervisor, Sgt. Snodgrass is the only correctional officer authorized to carry pepper spray. He testified pepper spray, a benign form of mace, causes extreme discomfort, but not permanent injury. He testified: "You wouldn't use pepper spray unless everything else fails. It is part of the ... continuum of force up the ladder from your presence [presence being the first step in the force continuum]. So, basically, yes, if talking with the inmate doesn't work for you, can't control the inmate or get them restrained, the next force would probably be pepper/mace." 2 Report of Proceedings at 128.
Sergeant Snodgrass assumed control of the scene and asked Bradley three times to return to his cell. Bradley continued to refuse. He also asked Bradley to stand up so Snodgrass could handcuff him. Bradley refused to stand. Snodgrass again threatened him with use of pepper spray, telling him what would happen if it got into his eyes. Bradley still refused to stand to be handcuffed or to go back to his cell.
Snodgrass then sprayed Bradley directly in the face with the pepper spray. Bradley sat up but did not otherwise react to the foaming spray. Allegedly in order to make the pepper spray work faster, Snodgrass testified he used his thumb to rub the spray into Bradley's eye. Snodgrass indicated Bradley then took a swing at him and bit his wrist, whereupon the other officers joined the fray, wrestled Bradley to the ground, and cuffed his hands behind his back, terminating his resistance.
Bradley told a very different version of what occurred. He stated to the jury he had been handcuffed before Snodgrass sprayed him with the pepper spray. He said the officers then jumped on him and were crushing him so he could not breathe. He claims a hand covered his mouth and nose, further preventing his breathing and, in an attempt to get air, he bit someone on the wrist.
As a result of this incident, the King County Prosecuting Attorney charged Bradley with two counts of custodial assault in accordance with RCW 9A.36.100(1)(c)(i).[2] One count was for assault on Redman and the other count was for assault on Snodgrass. Bradley argued self-defense. The jury by *360 general verdict found Bradley guilty of an assault on Snodgrass and not guilty of an assault on Redman.
Bradley appealed his conviction on the ground the trial court gave the jury an incorrect self-defense instruction. He also claimed ineffective assistance of counsel and argued the State failed to disprove self-defense beyond a reasonable doubt. The Court of Appeals affirmed the conviction. State v. Bradley, 96 Wash.App. 678, 681, 980 P.2d 235 (1999). That court held the invited error doctrine barred Bradley from challenging a jury instruction he himself proposed; there was no ineffective assistance of counsel because Bradley's trial counsel had not proposed an incorrect jury instruction; and sufficient evidence supported the jury's conclusion the correctional officers used lawful force.[3] The Court of Appeals specifically determined the trial court properly employed the "actual danger" standard for self-defense because "[t]he dangers to law enforcement officers and the needs for security are heightened in both the arrest setting and the custodial setting." Id. at 684, 980 P.2d 235. We granted Bradley's petition for review.

ANALYSIS
Initially, we note the State contends Bradley's argument on self-defense is barred by the doctrine of invited error. Because Bradley himself proposed the jury instruction he now challenges, the Court of Appeals correctly held he is barred from claiming error on appeal by the invited error doctrine. State v. Neher, 112 Wash.2d 347, 352-53, 771 P.2d 330 (1989). But in a criminal case, where the offering of an incorrect jury instruction may constitute ineffective assistance of counsel, we reach the merits of the challenge anyway in determining if counsel was ineffective. State v. Aho, 137 Wash.2d 736, 745-46, 975 P.2d 512 (1999).
To establish ineffective assistance of counsel, Bradley must demonstrate both that (1) his counsel's representation fell below an objective standard of reasonableness based on a consideration of all the circumstances, and (2) he was prejudiced. State v. Mierz, 127 Wash.2d 460, 471, 901 P.2d 286, 50 A.L.R.5th 921 (1995). At the core of this test here is the question of the standard for self-defense where a detainee assaults a correctional officer.
RCW 9A.16.020(3) provides the general test for self-defense in Washington:
The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
....
(3)Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary;
It has long been the law in Washington that self-defense may be justified by apparent danger to the person claiming the benefit of the defense, as opposed to actual danger. In State v. Carter, 15 Wash. 121, 123-24, 45 P. 745 (1896), we approved a trial court self-defense instruction based on apparent danger:
We think there was no impropriety in the court's explaining to the jury the nature and legal effect of defendant's plea; and the latter portion of the instruction must be considered in the light of the entire charge, and when so considered it is plain that the jury were given to understand that it was the right of the defendant to act upon the "apparent," as distinguished from the "actual" danger. In fact, the court expressly charged that
"A person need not be in actual imminent peril of his life or great bodily harm before he may defend himself. It is sufficient if in good faith he has a reasonable belief from the facts, as they appear to him at the time, that he is in imminent danger; if he honestly believes such to be the case then he had a right to act in self-defense."
*361 Further:
"The term `apparent danger' is to be understood as meaning not apparent danger in fact, but apparent danger as to defendant's comprehension; that is, did the defendant believe there was an apparent danger of being killed or of great bodily harm being inflicted upon his person at the time of the alleged stabbing."
Accord State v. LeFaber, 128 Wash.2d 896, 899-900, 913 P.2d 369 (1996). Thus, the general rule in Washington is that reasonable force in self-defense is justified if there is an appearance of imminent danger, not actual danger itself.
A different rule applies, however, if one seeks to justify use of force in self-defense against an arresting law enforcement officer. Numerous cases have held a person may use force to resist arrest only if the arrestee actually, as opposed to apparently, faces imminent danger of serious injury or death. The Court of Appeals in State v. Westlund, 13 Wash.App. 460, 467, 536 P.2d 20, 77 A.L.R.3d 270 (1975), first articulated the policy rationale for this rule:
[T]he arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes, whereas loss of life or serious physical injury cannot be repaired in the courtroom. However, in the vast majority of cases, as illustrated by the one at bar, resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat. Police today are sometimes required to use lethal weapons for self-protection. If there is resistance on behalf of the person lawfully arrested and others go to his aid, the situation can degenerate to the point that what should have been a simple lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders.
In State v. Holeman, 103 Wash.2d 426, 430, 693 P.2d 89 (1985) (quoting Westlund, 13 Wash.App. at 467, 536 P.2d 20) we specifically adopted the Westlund court's analysis: "Orderly and safe law enforcement demands that an arrestee not resist a lawful arrest ... unless the arrestee is actually about to be seriously injured or killed." Accord State v. Ross, 71 Wash.App. 837, 843, 863 P.2d 102 (1993) (actual danger is standard for self defense in assault on law enforcement officer).
Holeman and Westlund involved lawful arrests. Demonstrating the importance we place on "orderly and safe law enforcement," we extended the Holeman/Westlund rule even to allegedly unlawful arrests, specifically affirming Holeman in State v. Valentine, 132 Wash.2d 1, 20-21, 935 P.2d 1294 (1997), a case involving an alleged unlawful arrest.[4] Thus, the established rule for use of force in self-defense cases involving arrests requires the person face a situation of actual, imminent danger, not just apparent, imminent danger.
In this case, the jury instruction was patterned after the law for resisting arrest. Bradley himself proposed as his self-defense instruction WPIC 17.02.01, which provides in relevant part:

WPIC 17.02.01

LAWFUL FORCERESISTING POLICE

OR CORRECTIONAL OFFICER
It is a defense to a charge of (fill in crime) that the force [used]
[attempted] [offered to be used] was lawful as defined in this instruction.
A person may [use] [attempt to use] [offer to use] force [to resist] [to aid another in resisting] an arrest by someone known by the person to be a [police] [correctional] *362 officer, only if the person being arrested is in actual danger of serious injury. The person [using] [or] [offering to use] the force may employ such force and means as a reasonably prudent person would use under the same or similar circumstances.
11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02.01, at 199 (2d ed.1994) (emphasis added). Notwithstanding the WPIC caption, because the instruction refers only to arrests, the trial court changed the language without objection from Bradley or the State to reflect the circumstances involving correctional officers:
It is a defense to a charge of Custodial Assault that the force used was lawful as defined in this instruction.
The use of force upon or toward the person of a known correctional officer is lawful only when the person using the force is in actual danger of serious injury as a result of the use of unlawful force by the officer. The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar circumstances as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.
The state has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful.
Clerk's Papers at 36 (emphasis added). Bradley's trial counsel specifically said in open court he had no objection to the "actual danger" language.
On appeal, however, Bradley now asserts that language misstates the law. He claims RCW 9A.16.020(3) controls, notwithstanding our case law, because the Legislature made no exception in that statute for custodial assault cases. This argument fails in light of Holeman and Valentine, cases articulating the actual danger standard in interpreting the statute.
Bradley also urges us not to adopt the Holeman rule because the policy reasons behind Holemanprevention of the escalation of violencedo not apply to correctional officers in jails. Bradley contends that in jail, where such officers do not carry firearms, the danger of deadly violence is much less than on the streets. "The possibility that a conflict will escalate to a loss of life is remote." Supplemental Br. of Pet'r at 14-15. In other words, Bradley advances a more permissive standard for using physical force against correctional officers than the standard we have adopted for using physical force against arresting officers.
Bradley bolsters his argument by citing two cases. First, he cites State v. Miller, 89 Wash.App. 364, 949 P.2d 821 (1997), where the Court of Appeals considered a claim of self-defense by a detainee in the Asotin County jail who was tried for third-degree assault against a jailer. In a brief opinion, the Court of Appeals overturned the conviction because the trial court did not instruct the jury the State had the burden of proving the absence of lawful force beyond a reasonable doubt. Id. at 365, 949 P.2d 821.
But Miller had nothing to do with the issue in the present casewhether force in self-defense was justified by a person facing actual or only apparent, imminent harm. The only issue Miller considered was whether the instruction on the burden of proof was proper. The Miller court quoted at length from State v. Walden, 131 Wash.2d 469, 932 P.2d 1237 (1997), to establish the State bears the burden of disproving self-defense. Miller, 89 Wash.App. at 368, 949 P.2d 821. The parties and the Court of Appeals in Miller did not address the issue we now face; there was no issue before the Miller court as to whether there was actual danger or only apparent danger of imminent harm to Miller when he struck the jailer.
Bradley also points to State v. Hutchinson, 135 Wash.2d 863, 959 P.2d 1061 (1998), for support.[5] Hutchinson killed two Island County police officers who had taken him *363 into custody. He claimed self-defense. Although this case might have been good precedent for the issue in the case at bar, the Hutchinson trial court did not employ the same jury instruction the trial court here used. Rather, the Hutchinson trial court instructed the jury on the more lenient standard, WPIC 16.02:
Homicide is justifiable when committed in the lawful defense of the slayer when the slayer reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.
Hutchinson, 135 Wash.2d at 884, 959 P.2d 1061. The State did not argue on appeal this instruction should have used the words "actual intention to inflict death." Thus, we had no occasion in Hutchinson to decide whether actual or apparent was the correct standard to employ as justification for self-defense. While Bradley argued from Hutchinson in his brief to the Court of Appeals, he has not cited to Hutchinson in his supplemental brief here, and has apparently abandoned the case as support for his position.
Finally, with respect to the question of whether escalation of violence is more or less likely in jails than on the streets, Bradley's assertion that jails are inherently less volatile than the circumstances of a street arrest simply defies common knowledge and common sense. As is apparent from the facts in Hutchinson, weapons may be available in custodial situations. See In re Personal Restraint of Anderson, 112 Wash.2d 546, 772 P.2d 510 (1989) (discussing problem of weapons found on prison detainees). Security problems, some occasioned by the fact correctional officers are usually outnumbered by detainees, are serious in correctional facilities. "[A] detention facility is a unique place fraught with serious security dangers." State v. Baker, 28 Wash.App. 423, 425, 623 P.2d 1172 (1981). As we have noted, "[a] prison is `a tightly controlled environment populated by persons who have chosen to violate the criminal law, many of whom have employed violence to achieve their ends.'" In re Personal Restraint of Reismiller, 101 Wash.2d 291, 294, 678 P.2d 323 (1984) (quoting Dawson v. Hearing Committee, 92 Wash.2d 391, 396, 597 P.2d 1353 (1979)). The United States Supreme Court has noted in a much-cited passage:
Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. Even a partial survey of the statistics on violent crime in our Nation's prisons illustrates the magnitude of the problem. During 1981 and the first half of 1982, there were over 120 prisoners murdered by fellow inmates in state and federal prisons. A number of prison personnel were murdered by prisoners during this period. Over 29 riots or similar disturbances were reported in these facilities for the same time frame. And there were over 125 suicides in these institutions. See Prison Violence, 7 Corrections Compendium (Mar.1983). Additionally, informal statistics from the United States Bureau of Prisons show that in the federal system during 1983, there were 11 inmate homicides, 359 inmate assaults on other inmates, 227 inmate assaults on prison staff, and 10 suicides. There were in the same system in 1981 and 1982 over 750 inmate assaults on other inmates and over 570 inmate assaults on prison personnel.
Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).
In this case, Sergeant Snodgrass testified detainees at the King County jail are out of their cells during the late evening shift change and not yet asleep: "And if we have a disruption and everybody has toif you are an officer, you have to freeze your wing and try to make everybody go back to their cells." 2 Report of Proceedings at 131. It is possible to conclude that a situation in which detainees become upset at what they might consider brutal treatment of one detainee *364 may lead to a general affray, in which many might be injured.
We conclude the use of force against correctional officers should have the same status as the use of force against arresting officers, and should generally be discouraged as a matter of public policy. There seems to be little reason to differentiate between law enforcement officers making an arrest and correctional officers maintaining order in jails or other correctional facilities. We adhere to our preference expressed in Mierz, Valentine, and other cases for persons to resort to the processes of law rather than the self-help violence of the street.

CONCLUSION
We hold correctional officers should be in the same position as law enforcement officers with respect to the use of force against them by those claiming they acted in self-defense. The jury instruction employed by the trial court accurately describes the law in circumstances involving the use of force by persons in self-defense to the actions of correctional officers.[6] We affirm Bradley's conviction for custodial assault.[7]
GUY, C.J., SMITH, IRELAND, and BRIDGE, JJ., CONCUR.
SANDERS, J. (dissenting).
Detached reflection cannot be demanded in the presence of an uplifted knife.[[1]]
Until today, lawful self-defense in Washington did not require a Hobson's choice between death and criminal conviction:
"A person need not be in actual imminent peril of his life or great bodily harm before he may defend himself. It is sufficient if in good faith he has a reasonable belief from the facts, as they appear to him at the time, that he is in imminent danger; if he honestly believes such to be the case then he had a right to act in self-defense."
State v. Carter, 15 Wash. 121, 123-24, 45 P. 745 (1896) (citing court's instruction). Carter has never been overruled, nor does the majority overrule it today.
The time-honored rule in this jurisdiction, and virtually every other,[2] is self-defense justifies *365 *366 reasonable force against government actors when there is a reasonable appearance of imminent danger or grave physical injury or death, regardless of the actual nature of the threat as may be subsequently proved.[3]
Human nature has not changed in the century since Carter was decided, nor has the reason for this ancient rule.[4] The common law we inherited from our English-speaking forefathers, and which our legislature adopted by statute,[5]
[R]espects the passions of the human mind; and, (when external violence is offered *367 to a man himself, or those to whom he bears a near connection) makes it lawful in him, to do himself that immediate justice, to which he is prompted by nature, and which no prudential motives are strong enough to restrain. It considers that the future process of law, is by no means, an adequate remedy for injuries, accompanied with force; since it is impossible to say, to what wanton lengths of rapine or cruelty outrages of this sort, might be carried, unless it were permitted a man immediately to oppose one violence with another. Self-defence, therefore, as it is justly called the primary law of nature so it is not, neither can it be, in fact, taken away by the law of society.
4 St. George Tucker, Blackstone's Commentaries *3-4 (Rothman Reprints, Inc.1969) (1803).
We expect men to act on reasonable perceptions, and even homicide is lawfully justified when based on the reasonably perceived threat of imminent harm.[6]See State v. LeFaber, 128 Wash.2d 896, 899, 913 P.2d 369 (1996) ("A jury may find self-defense on the basis of the defendant's subjective, reasonable belief of imminent harm from the victim."). But today the majority asserts a prisoner must await the fruits of a law enforcement officer's brutal and life-threatening assault before the prisoner may act with confidence in his lawful right to defend against it. The majority notwithstanding, I posit no man of reason will passively sacrifice his life or limb in favor of a judgment which only 20/20 hindsight can render.
While the majority's rule will not alter actual conduct, it is a convenient tool to make criminals of those who act on reasonable perceptions to save themselves from serious physical injury. Ultimately the majority empowers the state at the expense of the hapless individual, seeking to justify its result by extrapolating a principle conceived from whole cloth and expounded by dicta.
The majority asserts the rule of reason does not apply to self-defense against a police officer or guard, while claiming support from State v. Westlund, 13 Wash. App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975); State v. Holeman, 103 Wash.2d 426, 693 P.2d 89 (1985); State v. Ross, 71 Wash. App. 837, 843, 863 P.2d 102 (1993); and State v. Valentine, 132 Wash.2d 1, 935 P.2d 1294 (1997). Although only two of these decisions are from this court, and therefore entitled to precedential value, the majority misreads the holding of each, elevating loose language to an "established rule" of its liking. Majority at 361.
The genesis of the "actual danger" standard for self-defense against police officers was the Court of Appeals' invention in Westlund. Until at least then the reasonable perception rule of self-defense governed conflict between citizens and law enforcement officials alike in Washington.[7] But setting itself above this centuries-old standard and acting without any precedential support, the Westlund court sought to invent a "middle ground" for self-defense against excessive force when employed by law enforcement officials. Westlund, 13 Wash.App. at 466-68, 536 P.2d 20. The Westlund opinion admitted "there is no case law precisely in point upon the rule we have adopted," but adopted it anyway, thus gratuitously undermining the lawful right of self-defense against an arrest reasonably perceived to employ excessive and unlawful force. Id. This novel curtailment of the common law rule of self-defense was extraordinary in light of the fundamental nature and long-standing history of the right.[8] But even more troubling was the *368 process through which the Westlund heresy then echoed through the pages of our own loosely written opinions.
Thus the majority invokes Holeman to support its assertion that the rule in Westlund is now "established." Majority at 361. But, the "actual danger" question was never even raised in Holeman. Holeman only argued that he had "the right to aid his father in resisting what he believed to be an illegal arrest of his father." Holeman, 103 Wash.2d at 429, 693 P.2d 89 (emphasis added). Though the court in Holeman launched into a discussion of the policy reasons for discouraging interference with arrest, the facts of that case stand only for the proposition that a person does not have the right to come to the aid of another simply because they believe an arrest is unlawful. Holeman, 103 Wash.2d at 429, 693 P.2d 89. The court there did not determine the proper lawful recourse from a reasonable belief that the force employed to effect the arrest was so excessive that great bodily injury or death would be the likely result. Holeman`s discussion of Westlund and the "actual danger" standard was pure surplusage, and therefore dicta.
Nor do Ross and Valentine extend Westlund to the facts before us. Majority at 361. The Court of Appeals in Ross found "no case law exists construing the proper self-defense instruction in the context of RCW 9A.36.031(1)(g)" (Ross, 71 Wash.App. at 841, 863 P.2d 102 (assaulting an officer while performing official duties)), falling back to Westlund and asserting Holeman`s approval. Id. at 843, 693 P.2d 89. The persuasive value of Ross is undermined by the cases upon which it relies,[9] and it is not binding in any event as it is the precedent of an inferior court.
Valentine is at least a decision of this court although still just another case in which Westlund and Holeman are expounded, but Valentine`s holding is without influence or relevance to the question we now consider. Valentine`s holding was a person may not forcibly resist an unlawful arrest which threatens the "mere" loss of freedom. Valentine, 132 Wash.2d at 21, 935 P.2d 1294. The distinction between actual and perceived danger was never at issue, nor was the use of excessive force to effect the arrest ever at issue (although it could have been argued the force used to overcome the resistance was certainly excessive).[10] As was the case in Holeman, the discussion of Westlund in Valentine was also entirely peripheral to the court's actual holding. Holeman, Ross, and Valentine are only mirrors of Westlund, and smoky ones at that.
State v. Hutchinson, 135 Wash.2d 863, 884-85, 959 P.2d 1061 (1998), however, is the most recent case from this court which actually stated and applied the common law rule, holding that a custodial defendant is entitled to employ even lethal self-defense against police guards based upon appearances.[11]
The majority claims prescience of policy to justify an unwarranted expansion of state *369 authority at the expense of centuries of legal tradition which affords at least a modicum of respect for prisoner's rights.[12] The majority's rationale for denigrating reasonable self-defense against unlawful use of state power simply does not support its conclusion. The majority reasons, "[T]he arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes," and resistance and intervention may "make matters worse, not better." Westlund, 13 Wash.App. at 467, 536 P.2d 20. Generally, the majority's preference for legal remedies in lieu of self-help is asserted as its ultimate ratio decidendi. See Majority at 361.
But even Westlund recognized, in sharp contrast to cases where the legal process actually provides a sufficient remedy, situations such as this where "loss of life or serious physical injury cannot be repaired in the courtroom." Westlund, 13 Wash.App. at 467, 536 P.2d 20 (emphasis added). Indeed, the traditional rule accounts for this eventuality by approving self-defense "if there is an appearance of imminent danger, not actual danger itself." Majority at 361. Such a reasoned standard reflects the reality that reasonable people act on reasonable perceptions. Common sense and the instinct to survive mandate men and women defend against serious injury or death when perceived. This imperative is in no way diminished simply because the perpetrator wears the badge of state power.
Moreover by relying upon the illusion of "available" legal remedies, citing personal preferences of de-escalation and "`[o]rderly and safe law enforcement,'" the majority applies a different standard for self-defense against law enforcement officers than for self-defense against others who appear to pose the same imminent threat of serious harm. Majority at 361 (quoting Holeman, 103 Wash.2d at 430, 693 P.2d 89). This distinction not only defies common sense but also departs from the established rule in the overwhelming number of other jurisdictions which have considered it.[13] More fundamentally, the majority ignores the simple truth that people act on their reasonable perceptions, and the law provides no adequate remedy for the victim once the trigger is pulled.
When excessive force is used or threatened the common law right of self-defense does not encourage citizens to resist, but rather protects those from criminal prosecution who were provoked to resistance. See Paul G. Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128, 1133-34 (1969) (where resistance provoked by arbitrary police behavior, it is fundamentally unfair to punish the expression of deep emotion with measured resistance). The right to resist unlawful excessive force is no different when law enforcement officers abuse their authority:
Liberty can be restored through legal processes, but life and limb cannot be repaired in a courtroom. Therefore any rationale, pragmatic or constitutional, for outlawing resistance to unlawful arrests and resolving the dispute over legality in the courts has no determinative application to the right to resist excessive force. The commentators are unanimous on this point ... and the Model Penal Code states it explicitly.
People v. Curtis, 70 Cal.2d 347, 450 P.2d 33, 39, 74 Cal.Rptr. 713, 719 (1969) (citations omitted).
The referenced Model Penal Code discourages resistance to even unlawful arrests, but allows self-defense against a peace officer based on the victim's perception of the threat of deadly force:
It should of course be noted, however, that the limitation forbids the use of force for the sole purpose of preventing an arrest; it has no application when the actor apprehends bodily injury, as when the arresting officer unlawfully employs or threatens deadly force.... *370 Model Penal Code § 3.04 cmt. 3(a) (Official Draft and Revised Comments 1985) (emphasis added).[14]
The great principle at the heart of the right of self-defense is exemplified by the facts of this very case. Before he was assaulted prisoner Bradley told guard Snodgrass he was not refusing to return to his cell, but simply could not do so because of physical illness. The guard reacted by spraying him directly in the face with pepper agent, and rubbing the pepper into his eyes to make the pain even more excruciating. During the ensuing struggle prisoner Bradley was accosted by multiple guards. At least two witnesses heard Bradley saying he could not breathe. According to Bradley he bit the guard's wrist only after he was pepper sprayed, crushed by multiple guards, and a hand covered his mouth and nose, posing what, at least arguably, reasonably appeared to be an immediate threat of suffocation.
But the majority demeans rational fears of serious injury or death by diminishing the right to legally defend against the perceived threat. It exalts the unlawful use of force by agents of the state at the expense of the victim, while immunizing the threat of excessive force. Paying lip service to prisoner Bradley's civil remedies against such excessive use of force, our majority would require the prisoner to await suffocation by correctional officers as precondition to self-defense, because only then could he be sure the danger was "actual." Majority at 364 n.6.[15]
As is well recognized by the common law, post hoc legal remedies are no substitute for the right to defend against the threat of serious injury or death. Individuals can only be expected to act on their own reasonable perceptions, and those perceptions are the only true standard for self-defense, whether the threat emanates from a private person, policeman, or prison guard. The majority invites homicide by making the litmus for lethal threat the "actuality" of carrying it out. But if death or grave bodily injury need be apparent and actual, the majority must make its case to the widows and orphans left behind. I cannot, and therefore dissent.
ALEXANDER, J. (concurring in the dissent).
The majority concedes that it has long been the law of Washington that a person may use reasonable force in self-defense if that person "`has a reasonable belief from the facts, as they appear to him at the time, that he is in imminent danger....'" Majority at 360 (quoting State v. Carter, 15 Wash. 121, 123, 45 P. 745 (1896)). It goes on, however, to suggest that we have carved out a different rule in cases where one seeks to justify the use of force in self-defense against an arresting officer. Majority at 361 (citing State v. Holeman, 103 Wash.2d 426, 693 P.2d 89 (1985); State v. Valentine, 132 Wash.2d 1, 935 P.2d 1294 (1997)). The rule in such cases, the majority asserts, is that a person may use force to resist arrest only if the arrestee actually, as opposed to apparently, faces imminent danger or serious injury or death. Majority at 361. In his dissent, Justice Sanders opines that Holeman and Valentine do not support the "different standard for self-defense" recognized by the majority. Dissent at 370.
*371 Even if we have recognized a rule applicable to arrest cases that differs from the rule of general applicability that we enunciated in Carter, it is my view that this rule should not be extended to cases where force is used by a person who is already in custody and who claims he or she is defending against actions of a custodial officer. The Carter rule should apply to such situations. I say that because a convincing argument has not been made for diluting that rule by recognizing the exception the majority employs here. In my view, the dynamics inherent in an arrest of a person "on the street" differ dramatically from those that come into play when authorities attempt to enforce discipline against persons who are already in custody. I would not, therefore, stray from the traditional rule regarding the employment of self-defense and would, thus, concur in the dissent.
JOHNSON, and MADSEN, JJ., concur.
NOTES
[1] Prior to the incidents in question here, Bradley, who has mental health problems, received valporic acid from jail health services to address his inability to sleep and his speech difficulties. While the side effects of the medication include overt psychoses, hearing voices, stumbling, loss of motor control, slurred speech, and stomach upset, Bradley testified at trial that he discontinued use of the drug two days before the events of this case.
[2] (1) A person is guilty of custodial assault if that person is not guilty of an assault in the first or second degree and where the person:

....
(c)(i) Assaults a full or part-time community correction officer while the officer is performing official duties.
[3] Bradley argued below in the Court of Appeals the State failed to prove the absence of self-defense beyond a reasonable doubt but has not renewed that contention here.
[4] In Mierz, 127 Wash.2d at 475, 901 P.2d 286, we likewise expressed a strong policy favoring the rule of law over the law of the street: "[I]n many cases the law enforcement officer and the citizen may both have sincere or reasonable beliefs about the lawfulness of the entry or arrest. Encouraging citizens to test their beliefs through force simply returns us to a system of trial by combat. The proper location for dealing with such issues in a civilized society is in a court of law."
[5] Actually, Bradley discussed the Court of Appeals decision, State v. Hutchinson, 85 Wash. App. 726, 938 P.2d 336 (1997), rev'd, 135 Wash.2d 863, 959 P.2d 1061 (1998), in his opening brief in the Court of Appeals because our decision had not yet been published. Br. of Appellant at 13-16.
[6] The dissent is an interesting compendium of cases that largely do not bear on the issue before us. These cases mostly address the question of whether an arrestee or detainee may use force to resist excessive or unlawful force by peace officers. The settled answer to that question is yes. In State v. Valentine, 132 Wash.2d 1, 21, 935 P.2d 1294 (1997), we said a person who is being unlawfully arrested has a right to use "reasonable and proportional force" to resist an attempt to inflict injury on him during the course of the arrest. But that is not the question here. The only question before the Court is whether Bradley must have been in actual danger of serious injury or only believes he was in danger of serious injury in order for his self-defense theory to be successful.
[7] By this opinion we neither address nor condone the excessive use of force to subdue jail detainees. We note, without expressing any opinion, Bradley retains his civil remedies for excessive use of force by King County correctional officers in effectuating his return to his cell. See, e.g., Staats v. Brown, 139 Wash.2d 757, 991 P.2d 615 (2000).
[1] Justice Oliver Wendell Holmes, Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961, 18 A.L.R. 1276 (1921).
[2] Fourth Circuit United States v. Stotts, 113 F.3d 493, 496-97 (4th Cir.1997) (approving instruction, which stated "If the Correctional Officer uses more force than appears reasonably necessary, the person stopped may defend against the excessive force ....") (emphasis added); United States v. Wallace, 368 F.2d 537, 538 (4th Cir.1966) (federal statute governing assault on an officer "does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense") (emphasis added); Fifth Circuit Hudson v. Hughes, 98 F.3d 868, 873 n. 2 (5th Cir.1996) (quoting La.Rev.Stat. Ann. § 14:19, a person may use self-defense against an officer "provided that the force or violence used must be reasonable and apparently necessary to prevent such offense") (emphasis added); Seventh Circuit United States v. Grimes, 413 F.2d 1376, 1379 (7th Cir.1969) (prisoner "privileged to use reasonable force in the defense of [another] if he reasonably believed that [the victim] was being subjected to an unprovoked physical assault by the prison guards") (emphasis added); Ninth Circuit United States v. Span, 970 F.2d 573, 576 (9th Cir.1992) (recognizing defendant's self-defense right, stating government must prove "defendants did not reasonably believe force was necessary to defend against an immediate use of unlawful force") (emphasis added); United States v. Morton, 999 F.2d 435, 438 n. 2 (9th Cir.1993) ("A second, related defense exists if the agent intended to use excessive force ....") (emphasis added); AlaskaGray v. State, 463 P.2d 897, 908 n. 18 (1970) (right to use reasonable force where arrestee "`believes, and has reason to believe, that he is in danger of being killed or of receiving great bodily harm'") (quoting 1 Wharton, Criminal Law and Procedure § 216 at 474) (emphasis added); Arizona State v. Martinez, 122 Ariz. 596, 596 P.2d 734, 736 (1979) (emphasis added) (evidence supports defendant's contention "he reasonably believed he was in physical danger [from officer], acted solely out of that belief, and used no more force than necessary to defend himself"); CaliforniaPeople v. Curtis, 70 Cal.2d 347, 450 P.2d 33, 39 n. 7, 74 Cal.Rptr. 713 (1969) (prohibition of force for preventing arrest has "no application when the actor apprehends bodily injury [by officer]") (emphasis added) (quoting Model Penal Code (Tent. Draft No. 8, 1958) § 3.04); Evans v. City of Bakersfield, 22 Cal.App.4th 321, 27 Cal.Rptr.2d 406, 412 (1994) (where excessive force is "used or threatened [by officer]," individual's right of self-defense is triggered) (emphasis added); People v. Perez, 12 Cal. App.3d 232, 90 Cal.Rptr. 521, 523 (1970) ("One qualification is that the right of self-defense is based upon the appearance of imminent peril [from officer] to the person attacked.") (emphasis added); People v. Kelley, 3 Cal.App.3d 146, 83 Cal.Rptr. 287, 290 (1969) (instruction proper, which stated arrestee "may stand his ground and defend himself if he has a reasonable basis for believing that serious bodily injury is about to be inflicted upon him") (emphasis added); FloridaWright v. State, 705 So.2d 102, 104 n. 1 (Fla.Dist.Ct.App.1998) (error to deny jury instruction, which allowed person to defend herself against officer "to the extent that she reasonably believes such force is necessary") (emphasis added); Johnson v. State, 634 So.2d 1144, 1145 (1994) (state of mind necessary for theory of self-defense is "appellant believed that his conduct was necessary to defend himself against imminent unlawful force [by officer]") (emphasis added); Jackson v. State, 463 So.2d 372, 374 n. 2 (Fla.Dist.Ct.App.1985) (any excessive force accompanying an arrest may be forcefully defended against "when and to the extent that he reasonably believes that such conduct is necessary to defend himself ... against such other's imminent use of unlawful force") (emphasis added); GeorgiaMullis v. State, 196 Ga. 569, 27 S.E.2d 91, 98 (1943) ("if the circumstances are sufficient to excite the fears of a reasonable man ... and the offender slays the officer ... to protect himself from what is or what reasonably appears to be such a felonious assault ... the killing would be justifiable") (emphasis added); IllinoisPeople v. Bratcher, 63 Ill.2d.534, 349 N.E.2d 31, 34 (1976) ("person `must actually believe that the danger [of harm] [by officer] exists [and], that his use of force is necessary to avert the danger'") (some alterations in original) (first and third alterations in original) (emphasis added); People v. Lyda, 190 Ill.App.3d 540, 546 N.E.2d 29, 33, 137 Ill.Dec. 405 (1989) ("it was for the jury to consider whether the defendant's conduct in struggling with the officers was justified by a reasonable belief on his part that his conduct was necessary to protect his brother from the use of excessive force") (emphasis added); IndianaPlummer v. State, 135 Ind. 308, 34 N.E. 968, 970 (1893) ("If he believed, and had reason to believe, from the actions of his assailant, that he is in danger of receiving great bodily harm, he may defend himself to a reasonable extent ... These principles apply as well to an officer attempting to make an arrest, who abuses his authority.") (emphasis added); LouisianaState v. Blancaneaux, 535 So.2d 1341, 1342 (La.Ct.App.1988) ("force or violence used must be reasonable and apparently necessary to prevent such offense [by officer]") (emphasis added); MaineState v. Austin, 381 A.2d 652, 654-55 (1978) ("a private person is justified in using reasonable, nondeadly force `upon another person,' in terms including a police officer, to defend himself `from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person.'") (first emphasis added); Massachusetts Commonwealth v. Moreira, 388 Mass. 596, 447 N.E.2d 1224, 1228 (1983) ("where the officer uses excessive or unnecessary force to subdue the arrestee, regardless of whether the arrest is lawful or unlawful, the arrestee may defend himself by employing such force as reasonably appears to be necessary") (emphasis added); Missouri State v. Thomas, 625 S.W.2d 115, 122 (MO. 1981) (for self-defense instruction, defendant must have "reasonably believed that forceful resistance was the only means by which he could protect himself against that excess [by officer]" (emphasis added); State v. Maxey, 661 S.W.2d 641, 643-44 n. 1 (1983) (instruction adequately stated law, which stated "If the defendant reasonably believed it was necessary to use such physical force as he used in order to protect himself from excessive force used [by officer].") (first emphasis added); State v. Nunes, 546 S.W.2d 759, 762 n. 1 (Mo.Ct.App.1977) (quoting Model Penal Code, § 3.04(3)) (person may use force against officer if "actor believes that such force is necessary to protect himself against death or serious bodily harm") (emphasis added); NebraskaState v. Yeutter, 252 Neb. 857, 566 N.W.2d 387, 391 (1997) ("To successfully assert the claim of self-defense [against officer], one must have a both reasonable and good faith belief in the necessity of using force") (emphasis added); NevadaBatson v. State, 113 Nev. 669, 941 P.2d 478, 483 (1997) (holding that a person may defend another "where the individual being `rescued' is facing imminent and serious bodily harm at the hands of the police officer" (citing Commonwealth v. French, 531 Pa. 42, 611 A.2d 175, 179 (1992))); New JerseyState v. Mulvihill, 57 N.J. 151, 270 A.2d 277, 280-81, 44 A.L.R.3d 1071 (1970) (jury could have found that officer's actions caused defendant "reasonably to feel and to fear that an effort was being made to point the gun at him and to fire it") (emphasis added); New MexicoState v. Kraul, 90 N.M. 314, 563 P.2d 108, 112 (1977) ("right of self-defense is not barred simply because the other person in the affray is a police officer"); New York People v. Stevenson, 31 N.Y.2d 108, 286 N.E.2d 445, 448 n. 2, 335 N.Y.S.2d 52 (1972) (citing self-defense statute for use of force against officer "when and to the extent he reasonably believes such to be necessary to defend himself... from what he reasonably believes to be the use or imminent use of unlawful physical force") (emphasis added); Oregon State v. Wright, 310 Or. 430, 799 P.2d 642, 645 (1990) (citing Or.Rev. Stat. 161.209, which allows use of force against "what the person reasonably believes to be the use or imminent use of unlawful physical force [by officer]" (quoting id.)) (emphasis added); Oklahoma Carter v. State, 507 P.2d 932 (Okla. Crim.App.1973) (person may use force in self-defense where officer placed hand on gun and threatened to shoot, even where officer testified he didn't intend to shoot); PennsylvaniaCommonwealth v. French, 531 Pa. 42, 611 A.2d 175, 179 (1992) ("arrestee's use of force in self protection is justified when the arrestee reasonably believes that such force is immediately necessary to protect against an arresting officer's use of unlawful and deadly force") (emphasis added); TennesseeTenn. Code Ann. § 39-11-611(e)(2) (1997) (force authorized in self-defense where "[t]he person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary") (emphasis added); TexasTex. Penal Code Ann § 9.31(c)(2) (West Supp.2000) (force authorized in self-defense "when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary") (emphasis added); Garner v. State, 858 S.W.2d 656, 661 (Tex.Crim.App. 1993) (citing Tex. Penal Code § 9.31(c)(1) and (2), which states a person may use force "when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the officer's ... use or attempted use of greater force than necessary" (quoting id.)) (emphasis added); Rodriquez v. State, 544 S.W.2d 382, 384 (Tex.Crim.App. 1976) (citing Texas Penal Code § 9.31(c)(1) and (2), discussing "whether appellant's beliefs, fears and actions were reasonable as required by statute") (emphasis added); VirginiaFoote v. Commonwealth, 11 Va.App. 61, 396 S.E.2d 851, 856 (1990) (citing McGhee v. Commonwealth, 219 Va. 560, 248 S.E.2d 808, 810 (1978), law of self-defense is law of necessity, i.e., defendant must reasonably fear serious bodily harm to himself at the hands of his victim)) (emphasis added); WyomingYetter v. State, 987 P.2d 666, 669 (1999) ("the law permits a person to use the force she reasonably believes is necessary to protect herself against an officer's use of excessive force") (emphasis added).

The majority cannot point to another jurisdiction that has explicitly adopted the "actual danger" standard. To the contrary, the standard was explicitly rejected by the Pennsylvania Court of Appeals in Commonwealth v. French, 396 Pa.Super. 436, 578 A.2d 1292, 1298 (1990) (disregarding the "actual danger" requirement, saying "[w]e think that this formulation protects the competing interests implicated here. The jury, when accurately instructed, must resolve the factual issues regarding the reasonableness of the arrestee's apprehension of the degree of excessive force allegedly being used against him."), aff'd, Commonwealth v. French, 531 Pa. 42, 611 A.2d 175 (1992).
[3] The majority says this overwhelming list of authority "largely [does] not bear on the issue before us," because those cases address whether a person may defend against unlawful use of force by police officers. Majority at 364 n.6. The majority says the "settled answer" to that question is yes. Id. Unfortunately, though the majority today holds "correctional officers should be in the same position as law enforcement officers," id. at 364, it does not feel compelled to adopt the apparently equally "settled answer" to the question of whether the person needs to be in "actual danger" to invoke that right of self-defense against a police officer's, and equally a correctional officer's, unlawful use of excessive force.
[4] "The law has grown ... in the direction of rules consistent with human nature. Many respectable writers agree that if a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not exceeded the bounds of lawful self-defense." Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 18 A.L.R. 1276 (1921).
[5] RCW 4.04.010 provides, "The common law ... shall be the rule of decision in all the courts of this state." The common law was adopted into territorial law in 1862 and was incorporated into state law in 1891. Laws of 1862, § 1, at 83; Laws of 1891, ch. 17, § 1, at 31. "Shall" is imperative. State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994).
[6] "Wherefore, to excuse homicide by the plea of self-defence, it must appear that the slayer had no other possible (or, at least, probable) means of escaping from his assailant." 5 St. George Tucker, Blackstone's Commentaries *184 (Rothman Reprints, Inc.1969) (1803) (emphasis added) (footnote omitted).
[7] "[D]id the defendant have reason to believe, and did he in fact believe, that what he did was necessary for the safety of his own life, or to protect him from great bodily harm?" Beard v. United States, 158 U.S. 550, 562, 15 S.Ct. 962, 966, 39 L.Ed. 1086 (1895).
[8] "Manslaughter therefore on a sudden provocation differs from excusable homicide se defendendo in this: that in one case there is an apparent necessity, for self-preservation, to kill the aggressor; in the other no necessity at all, being only a sudden act of revenge." 5 Blackstone's Commentaries, supra, *192 (second emphasis added).
[9] Ross also cites City of Seattle v. Cadigan, 55 Wash.App. 30, 37, 776 P.2d 727 (1989). Cadigan is yet another case that sets forth the "actual danger" standard as a bare proposition, citing only State v. Westlund, 13 Wash.App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975) for support.
[10] The majority itself recognizes Valentine addresses an issue "that is not the question here." Majority at 364 n.6.
[11] The majority attempts to distinguish State v. Hutchinson, 135 Wash.2d 863, 884-85, 959 P.2d 1061 (1998), cert. denied, 525 U.S. 1157, 119 S.Ct. 1065, 143 L.Ed.2d 69 (1999), in which a deficient jury instruction was upheld only because it was cured by another instruction which clearly allowed for self-defense where the person has a reasonable, but mistaken, belief in danger of injury. The Hutchinson court considered the issue of the self-defense standard in a custodial setting, directly holding the subjective self-defense standard justified self-defense in a case which involved alleged self-defense against custodial officers appearing to utilize excessive force. Hutchinson, 135 Wash.2d at 885, 959 P.2d 1061. The traditional standard for self-defense articulated in Hutchinson governs the present case as well, as it is the common law rule and the circumstances of that case which are far more similar than the arrest cases cited by the majority ("[I]nstruction 30 explicitly informed the jury the Defendant was entitled to act on appearances and the actual danger was not required. Accordingly, we hold the instructions, taken in their entirety, properly stated the law." Id. (emphasis added) (citation omitted).).
[12] "`A tyrant disturbs ancient laws....'" Herodotus, quoted in Edith Hamilton, The Greek Way 106 (W.W. Norton & Co. 1993).
[13] See footnote 2, supra.
[14] The Westlund court claimed the "modern trend" was to prohibit resistance to even unlawful arrests, citing section 3.04(2)(a)(i) of the Model Penal Code. Westlund, 13 Wash.App. at 468, 536 P.2d 20. It then sanctimoniously proclaimed "our rule does not go as far as the Model Penal Code rule because we recognize that there are the rare occasions when there is an actual danger of serious injury or death to the arrestee." Id. But then Westlund added an ominous twist: "the serious physical danger threatened or inflicted must be actual. A reasonable but mistaken belief that the arrestee was about to be seriously injured or that the arrestee was entitled to protect himself from such danger is insufficient." Id. But, contrary to Westlund, the Model Penal Code authorizes self-defense against law enforcement based upon the mere apprehension of bodily injury or threat of deadly force. Far from being a "middle ground" within the parameters of the Model Penal Code, the Westlund "actual danger" standard represents a radical departure from the traditional rule and contradicts the very source cited for its support.
[15] Suppose he had not bitten the guard and was suffocated? What remedy would our majority afford this victim then? Tell his widow and orphan, "[W]e neither address nor condone the excessive use of force to subdue jail detainees"? Majority at 364 n.6.