# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 72892-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAYMOND EDWARD JORDAN, | ) | |
| aka RAYMOND D. JORDAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 4, 2015 |
| | ) | |

LEACH, J. — Raymond Edward Jordan appeals his conviction for five counts of third degree assault. He claims that the trial court prevented him from presenting his theory of the case by refusing to instruct the jury on self-defense. Because the record contains no evidence sufficient to entitle Jordan to a self-defense instruction, the trial court did not err when it failed to give this instruction. We affirm.

## FACTS

On February 4, 2013, emergency medical technicians (EMTs) responded to a request for assistance. When they arrived at the Yakima public library, they found Raymond Jordan lying face down in a bathroom stall. They entered the stall and attempted to get a response from Jordan. When Jordan failed to respond, they rolled him onto his back. After one EMT administered a sternum rub, Jordan awoke to one of them supporting his head in a C-spine hold (cervical spine immobilization). Jordan looked at the EMT, sat up, and began swinging

and kicking. They restrained Jordan on the ground. One of the EMTs jumped with his knees onto Jordan's legs to prevent him from kicking and hit Jordan's sternum when Jordan attempted to punch the EMTs. Jordan cussed and told the EMTs to "f*** off" and "get the f*** off of me" when they questioned him.

Firefighters arrived and assisted the EMTs in restraining Jordan. One of the EMTs testified on cross-examination that Jordan's responses to his questions caused the EMT to believe Jordan needed treatment and substituted his own judgment for Jordan's. While the emergency personnel held Jordan down, an EMT injected him with a sedative, Versed, and expected him to pass out within 10 to 15 minutes. Jordan continued to swing, kick, and direct obscenities at those restraining him. He tried to bite one of the firefighters several times.

Yakima police began to arrive. The first to arrive placed Jordan in handcuffs, but when EMTs could not strap him to a backboard, they asked police to remove the handcuffs. Jordan remained combative. Both EMTs testified that they believed Jordan did not want to be placed on a backboard. As Jordan attempted to push toward the officers and firefighters restraining him, Officers Robert Grant and Mark Grow took over the restraint of Jordan's arms, and Officer Grant put a knee on Jordan's chest. Grant believed Jordan had been drinking based on the smell and vomit but did not know EMTs had administered a sedative. Jordan pinched and twisted Officer Grow's arm and tried to bite both

-2-

officers. Jordan took Officer Grant's radio, but Officer Grant retrieved it. Jordan then leaned forward with an open mouth as if to bite Officer Grant, but Officer Grant told him not to try to bite him and kneed Jordan in the chin. Jordan then attempted to bite Officer Grant again, and Officer Grant punched Jordan twice in the face. Officer Grant helped secure Jordan on the backboard. Jordan continued to push away for a few seconds, but the punches "took the fight out of him."

The State charged Jordan with five counts of third degree assault against two EMTs, one firefighter, and Officers Grant and Grow. At the close of trial, the court instructed the jury on voluntary intoxication's effect on one's ability to form intent, but it declined to give Jordan's proposed instruction on involuntary intoxication to the jury. It also declined to give an instruction on the lawful use of force in self-defense, stating,

> I agree with the State on this point. I think the right to refuse does not include the right to use physical force, at least the hitting, the biting and kicking, and it's obviously also a limited right to refuse. I think the EMT probably testified accurately that when a person's mental state is such that they have an obligation, a legal obligation, to substitute their own judgment for a person who isn't able to protect themselves with their decisions, so I agree with the State. The instruction will not be given.

The jury found Jordan guilty, and the court gave him a standard range sentence. Jordan appeals.

## STANDARD OF REVIEW

Where a trial court declines to give a self-defense instruction, this court's standard of review depends on the reason the trial court gave for its ruling.[1] If the trial court declined the instruction because it found no evidence supported the defendant's subjective belief that he is about to be injured, we review for abuse of discretion.[2] But this court reviews de novo a trial court's determination as a matter of law that no reasonable person would have acted as the defendant did under the circumstances.[3] Because the trial court determined as a matter of law that no reasonable person may use physical force such as hitting, biting, and kicking when exercising a right to refuse medical treatment and failed to give the instruction for that reason, we review de novo. This court views the evidence in the light most favorable to the defendant.[4]

## ANALYSIS

Jordan claims that the trial court denied him the opportunity to present his defense when it declined to give Jordan's proposed self-defense instruction. We disagree.

The trial court must instruct the jury on the defendant's case theory where evidence supports that theory, and the court's failure to do so constitutes

---

[1] State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002).
[2] Read, 147 Wn.2d at 243.
[3] Read, 147 Wn.2d at 243.
[4] State v. George, 161 Wn. App. 86, 95, 249 P.3d 202 (2011).

reversible error.[5] A defendant must produce some evidence demonstrating self-defense to be entitled to a self-defense instruction, and the burden then shifts to the prosecution to prove the absence of self-defense.[6] Ordinarily, a defendant proves self-defense by showing that he subjectively feared that he was about to be injured, that this belief was objectively reasonable, and that he exercised no greater force than was reasonably necessary.[7] When charged with assaulting a law enforcement officer, the defendant must fear more serious injury, "an imminent threat of serious physical harm."[8] "The evidence of self-defense must be assessed from the standpoint of the reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees."[9] A jury need not find actual danger to establish self-defense but only that the defendant reasonably believed danger of imminent harm existed.[10]

We look to see if the record contains any evidence that Jordan subjectively believed he was in danger of imminent harm and if his belief was

---

[5] State v. Harvill, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010) (quoting State v. Williams, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997)).

[6] State v. McCreven, 170 Wn. App. 444, 462-63, 284 P.3d 793 (2012) (quoting State v. Walden, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997)).

[7] RCW 9A.16.020(3); State v. Werner, 170 Wn.2d 333, 337, 241 P.3d 410 (2010); State v. L.B., 132 Wn. App. 948, 953, 135 P.3d 508 (2006).

[8] State v. Mierz, 127 Wn.2d 460, 476, 901 P.2d 286 (1995).

[9] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

[10] Riley, 137 Wn.2d at 909.

objectively reasonable.[11] Jordan argues that the record sufficiently shows that he subjectively feared imminent harm. Testimony at trial shows that Jordan gained consciousness in response to the EMTs rolling him over and administering a sternum rub. One of the EMTs supported his head in a C-spine hold and explained to Jordan who the EMT was and what was happening. Jordan responded by swinging and kicking. To justify the first alleged incident of assault, Jordan must identify some evidence showing that he had a subjective fear of harm before he acted and the objective reasonableness of this fear. Contrary to Jordan's claim, his swinging and kicking alone is not evidence of subjective fear—only unexplained aggression. By the time Jordan told the EMTs to "f*** off" and "get the f*** off of me," he had already assaulted the EMTs. Thus, the record contains no evidence showing that Jordan acted with subjective fear of imminent harm when he first assaulted the EMTs.

Because all the remaining assault charges resulted from Jordan's continued struggle against justified restraint after Jordan first assaulted the EMTs, no evidence shows that he ever acted in self-defense. Under RCW 70.96A.120(2), once a person has threatened, attempted, or inflicted physical harm on himself or others, a peace officer shall take that person into protective custody. And the officer may use reasonable force to protect himself or herself

---

[11] See State v. Walker, 136 Wn.2d 767, 773, 966 P.2d 883 (1998).

or to effect the custody.[12] Once Jordan assaulted the EMTs with no evidence of self-defense, the EMTs and firefighters had reason to use force to further protect themselves and to detain Jordan. And because the police would have arrested Jordan if emergency personnel had not taken him to the hospital, the record must include some evidence that Jordan feared actual, imminent, serious injury or death, the more stringent standard applied to a defendant charged with assaulting a law enforcement officer.[13] Jordan does not identify any evidence showing that he feared actual, imminent, serious injury or death as required to entitle him to a self-defense instruction for the remaining charges.

Where the record does not include any evidence of the subjective element of self-defense, we need not review the objective element.

## CONCLUSION

Because the record shows no evidence of the subjective element of self-defense, the trial court did not err when it declined to give a self-defense instruction. We affirm.

_____
Leach, J.

WE CONCUR:

_____
Appelwick, J.

_____
Cox, J.

---

[12] RCW 70.96A.120(2).
[13] See State v. Bradley, 141 Wn.2d 731, 737-38, 10 P.3d 358 (2000).

-7-