**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82056-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JUWAN MARCHE WILLIAMS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Juwan Williams appeals his conviction for custodial assault. Williams argues that the trial court's failure to give his requested jury instruction on self-defense deprived him of a fair trial. Because the trial court did not abuse its discretion when determining a self-defense instruction was not warranted, we affirm.

FACTS

In the fall of 2017, Williams was incarcerated at Green Hill School, a juvenile detention facility in Lewis County, Washington. Staff member Dylan Burger caught Williams attempting to light a joint in his cell using two batteries and a paper clip. Burger asked Williams to exit his room, stand against the wall, and receive a pat search.

Citations and pin cites are based on the Westlaw online version of the cited material.

Instead, Williams walked down the hallway, swallowed the joint, and concealed the batteries and paper clip in his hand.

Williams sat down at the end of the hallway, where he refused Burger's request that he open his mouth. Burger called a security escort, to which officers Bryan Lowe and Jonathan Kendall responded. General protocol in these situations is to remove the non-compliant individual to an isolated location until he complies with a personal search. When the officers arrived, Williams stood up and allowed himself to be handcuffed. After a short conversation with the officers, Williams agreed to perform the personal search in the unit, rather than in isolation.

A strip search requires two staff members to be present and approval from a supervisor. Supervisor Henry Davis approved Williams's strip search. During the search, the door is open halfway, one person stands in the door and the other stands directly behind them. The events of Williams's search are in dispute.

According to Williams, Lowe asked him to "helicopter" his penis. If Williams performed the act, Lowe would have allowed him to flush his contraband. When Williams asserted that he was not gay, and asked Lowe not to "sex-play" him, Lowe threatened Williams with time in isolation and the possibility of being sent to prison if he told supervisor Davis. William claimed that Lowe grabbed his arm and he panicked and resisted leading Lowe to grab his throat. Williams then wrestled with the officers.

According to Lowe and Kendall, Lowe was in the doorway to the bathroom with his body blocking the view to protect Williams's privacy. Kendall could not see into the bathroom but could hear Lowe giving directives. Lowe asked Williams to take off his shirt, which he did. Lowe shook out Williams's shirt, then handed it back to Williams to

put back on. Williams began removing his shorts, which he did with one hand as he had something clutched in the other. Lowe told Williams, "why don't you just give me what you have in your hand? You can put your shorts back on." Williams pulled up his shorts but refused to hand over what he was holding. Williams responded, "I'm not going to give it up. You guys are going to have to take it."

When Williams stopped complying, Lowe entered the bathroom and Kendall followed. After additional requests, Williams began to threaten the officers. The officers each took one of Williams's hands.

Although the events of the strip search are in dispute, the following events are not.

Supervisor Davis observed that the officers had gone into the bathroom and the door was shut. He walked over, saw that the officers had grasped Williams's arms, and used his key to enter the bathroom. The officers tried to bring William out of the bathroom, which he refused to do. When Williams got to the door, he stated, "Henry, tell them I'm not going to do it." Williams then snatched away from the officers, pushing Kendall into the wall. A wrestling match ensued, taking six staff members including Burger, Kendall, Lowe, and Davis to subdue Williams and place him in restraints. As a result, Kendall was pushed into a doorjamb. Williams later apologized to Kendall, saying he did not mean to hurt him.

The State charged Williams with two counts of custodial assault against Kendall and Burger. On the morning of trial, Williams informed the trial court and the State that he was asserting a claim of self-defense against pushing Kendall, but disputed kicking Burger. In order to allow the self-defense instruction, the trial court required Williams

produce an offer of proof. Williams produced his version of events during the strip search.

The trial court ruled that the offer of proof did not rise to the required standard of actual imminent danger of serious injury, a heightened self-defense standard in the context of custodial assault. Williams was acquitted of the custodial assault against Burger but found guilty as charged for the assault against Kendall. He was sentenced to 36 months in prison, to run consecutive with his current sentences.

Williams appeals.

ANALYSIS

The standard of review applied to a trial court's refusal to grant a self-defense instruction depends on whether the refusal was based upon a matter of law or fact. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). We review a decision based on law de novo, and a decision based on fact for an abuse of discretion. Walker, 136 Wn.2d at 771-72. Here, the trial court based its refusal on a mixed legal and factual finding, so we undergo each inquiry separately.

The general rule of law in Washington is that reasonable force in self-defense is justified if there is an appearance of imminent danger, not actual danger itself. State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). If one seeks to justify use of force against a custodial officer, however, a different rule applies. "A person may use force to resist arrest only if the arrestee actually, as opposed to apparently, faces imminent danger of serious injury or death." Bradley, 141 Wn.2d at 737; State v. Garcia, 107 Wn. App. 545, 548, 27 P.3d 1225 (2001).

The record shows that the trial court identified the applicable legal standard. As an offer of proof for the claim, Williams submitted the following:

So this is down to the point where apparently it's Mr. Lowe standing in the bathroom with my client. Mr. Lowe says to [Williams]:

You look good, man. I know that you still have the batteries, some weed on you. Helicopter that black dick for me and I'll let you flush everything.

I felt extremely violated. I felt trapped and powerless. I told Mr. Lowe that I am not gay and to not sex-play me as well as to hand over my clothes so I can get dressed. Mr. Lowe played "keep away" with my clothes before saying, "if you say anything to [Supervisor Davis], I'll make sure that you stay in the hole for a while. I'll do everything in my power to make sure you get sent to prison. No one will believe you. You're serving ten years. Me and Kendall are going home tonight.

I was sitting on the toilet during his spiel. At the conclusion of his fearful words, he repeatedly asked me, "Do you understand?" After four times, I felt a firm grip latch on my forearm. I panicked and struggled from the hold by maneuvering my arm. Kendall reached and grabbed my throat.

I felt alone, scared, and feared for my safety. Plus, the sexual comments as well as the threats to lock me in the hole and send me to prison had me spooked. Being alone in that bathroom was one of the scariest moments of my life. After pushing Kendall, [Davis], the supervisor, barged into the bathroom and attempted to restrain me. Was brought into the day room.

So that's our offer of proof.

After considering this offer, the trial court denied the self-defense instruction, stating:

All right. Based on that offer of proof, I'm not allowing the defense to present the defense of self-defense. In custodial assault cases, according to State vs. Bradley and State vs. Garcia, it's not the usual self-defense standard of reasonable apprehension of fear. The use of force is only legal when the person is in actual imminent danger of serious injury, and the offer of proof that was provided does not establish that.

We agree the offer of proof was insufficient because Williams proffered no evidence he actually faced imminent danger of serious injury or death. Williams was

incarcerated in a juvenile detention facility, was detained by two officers for his privacy and safety during the strip search, a supervisor was aware and approved the search, and multiple staff members were just outside the door.  Here, "resistance and intervention [made] matters worse, not better.  They create[d] violence where none would have otherwise existed or encourage[d] further violence."  State v. Westlund, 13 Wn. App. 460, 467, 536 P.2d 20 (1975).  The trial court did not abuse its discretion in refusing Williams's self-defense instruction.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Chun, J._                    _Andrus, A.C.J._