611 A.2d 175

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Kathleen FRENCH, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1992.

Decided May 20, 1992.

44

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., George S. Leone, Philadelphia, for appellant.

John W. Packel, Chief, Appeals Div., Stuart B. Lev, Philadelphia, for cross-appellant.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

At issue in these cross-appeals by allowance is whether the use of force against an arresting officer is ever justified, an issue of first impression in this Court; and whether a new

trial is required on grounds that appellee was not permitted to examine pre-trial statements by certain of the Commonwealth's witnesses.

On October 17, 1987, police officer John Welsh was summoned to the scene of an altercation in the Frankford section of Philadelphia. Officer Welsh separated the individuals involved in the fracas, and upon being joined by three other police officers, listened to the participants' respective versions of the incident. The events taking place after the individuals were separated resulted in appellee [1] being arrested and charged with aggravated assault, simple assault, recklessly endangering another person, resisting arrest, criminal conspiracy and disorderly conduct. [2]

At appellee's trial, the Commonwealth's evidence showed that when Officer Welsh arrived at the scene of the altercation, he observed appellee, appellee's sister and her sister's boyfriend as well as appellee's boyfriend beating an individual who was pinned to the ground. Officer Welsh pulled these four individuals away from the person being beaten, a black male, and attempted to determine the cause of the altercation. Appellee and her three companions told the Officer that they had been attacked by a group of young men, including the individual whom they were beating, after appellee shouted at the group to stop harassing a couple at a nearby bus stop. Officer Welsh and the three police officers who had arrived on the scene in the interim were told by the individual being beaten that he was walking along the street on his way to catch a bus when he was attacked by appellee and her three companions; he denied that he was involved in harassment of anyone. The officers determined that the individual did not wish to press charges and allowed him to leave. Appellee and her companions were also ordered to leave. At that point, the four refused to leave and began shouting obscenities at the

1. Pursuant to an agreement between counsel, the Commonwealth has proceeded as appellant, and Kathleen French has proceeded as appellee.

2. The Commonwealth subsequently filed a *nolle prosequi* as to the simple assault, recklessly endangering another person, and disorderly conduct charges.

officers. The boyfriend of appellee's sister then called Officer Welsh a "nigger lover" and punched him in the face. When Officer Welsh returned the punch, he was in turn, punched in the face by appellee's boyfriend. The officers subdued both men and placed them under arrest. Officer Welsh then ordered appellee, who was still shouting obscenities at the officers, to leave or face arrest. Appellee responded with another obscenity and punched Officer Welsh in the face, after which she was arrested.[3]

Appellee's testimony at trial differed from the Commonwealth's version of the incident. Appellee testified that she and her three companions were walking along the street when they noticed a group of young males harassing another couple. According to appellee, as a result of her shouting at the group to leave the couple alone, her boyfriend was attacked by the group. Appellee also testified that after Officer Welsh and the other three officers arrived on the scene, they used nightsticks to strike her boyfriend in the ribs and on the back of the head. Appellee stated that one officer had his foot on her boyfriend's throat and was "choking him to death" and that the officers ignored pleas from her sister's boyfriend to stop before they killed appellee's boyfriend. Appellee also testified that "when they [the police] wouldn't stop and I seen him starting to turn colors, I turned around and hit Officer Welsh." The testimony of appellee's co-defendants was consistent with her testimony.

The jury convicted appellee of aggravated assault, resisting arrest and conspiracy.[4] Post-trial motions were denied, and appellee was sentenced to a five-year probationary term. On appeal, Superior Court vacated the judgment of sentence and remanded the case for further proceedings. 578 A.2d 1292.

3. Appellee's co-defendants at trial were her boyfriend and her sister's boyfriend; her sister was charged only with disorderly conduct and was not tried with the others. The jury convicted appellee's boyfriend of aggravated assault, resisting arrest and conspiracy; appellee's sister's boyfriend was acquitted of all charges.

4. 18 Pa.C.S.A. §§ 2702, 5104 and 903, respectively.

■ Appellee's first contention is that the trial court's instruction to the jury on the defense of justification was inadequate. The trial court's charge to the jury was as follows.

> [I]n this case justification is a defense if the defendant French reasonably believed that her intervention was necessary to protect Moran [appellee's boyfriend] from death or serious bodily injury and that the force used was immediately necessary to protect Moran against the force used by Officer Welsh on the same occasion as Miss French used force. Because the Commonwealth has the burden of disproving the defense of justification, you may find Miss French guilty only if you are satisfied beyond a reasonable doubt either that French did not reasonably believe that her intervention was necessary to protect Moran or that she did not reasonably believe that the force she used was immediately necessary to protect Moran then and there against the force used by Officer Welsh.

N.T. 11/14/88, at 3.130.

Appellee contends that this instruction unfairly limited her justification defense to only those situations in which she reasonably believed that use of force was necessary to protect against serious bodily injury or death. The proper instruction, appellee contends, the one requested by her, would have permitted the jury to find that her use of force against Officer Welsh was justified if she reasonably believed that such force was necessary to protect against *any* bodily injury. Superior Court, looking to case law in other jurisdictions and to comments from the Model Penal Code, resolved this issue by holding that the trial court's instruction to the jury was proper.

Section 505 of Pennsylvania Crimes Code, which defines the right of self defense, provides, inter alia, that the use of force in self protection is not justified to resist arrest.[5] (However,

---

5. Section 505 provides in pertinent part:
 **§ 505 Use of force in self protection**
 **(a) Use of force justifiable for protection of the person—.** The use of force upon or toward another person is justifiable when the actor

see discussion of Official Comment to § 505(b)(1)(i), *infra*.) At common law, there existed a right to resist unlawful arrests. Both English and American courts considered the assertion of arbitrary authority as a provocation to resist arrest. See generally Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128 (1969). It has been recognized, however, that this common law rule is no longer consistent with the needs of modern society, resulting in abrogation of the rule in recent years by numerous jurisdictions, either by judicial decision or by statute.[6]

Appellee contends that the instant case does not involve the use of force to resist arrest but, rather, involves the use of force to resist excessive force by an arresting officer. It is appellee's position that the use of force by an arresting officer which exceeds the force required to effectuate the arrest amounts to an assault on the arrestee which triggers the right of self defense.

■ The Commonwealth argues that the prohibition on resisting arrest as set forth in § 505(b)(1)(i) nullifies the right of an arrestee to use force in self defense regardless of the level of force used by the arresting officer. The Commonwealth also argues that an arrestee who is subjected to more force than necessary to effectuate the arrest can sue the arresting officer. That the remedy of a future lawsuit fails to address the exigent nature of a situation in which one's life and limb are in danger, focuses our inquiry on the critical aspect of this issue: while an arrestee's liberty interest can be adequately protected through legal channels when there has

believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

The section also lists a number of limitations on the justifiable use of force; relevant to this analysis is the following.

**(b) Limitations on justifying necessity for use of force.—**

(1) The use of force is not justifiable under this section:

(i) to resist arrest which the actor knows is being made by a peace officer, although the arrest is unlawful;

6. See *Commonwealth v. Moreira*, 388 Mass. 596, 447 N.E.2d 1224 (1983), listing jurisdictions which have abrogated the common law right to resist arrest.

been an unlawful arrest, one's bodily integrity is not adequately protected by those same means when an arresting officer uses excessive force. This distinction between resisting an arrest and resisting the use of excessive force by an arresting officer is sufficiently compelling for us to conclude that the use of excessive force by an arresting officer may trigger the right to use force in self protection under § 505 (or, by virtue of § 506, in protection of others) [7]. In determining the circumstances under which an arrestee may use force against an arresting officer, guidance is provided in the Official Comment to § 505, which states, "Under Subsection (b)(1)(i) the actor may use force if the arresting police officer unlawfully uses or threatens deadly force." [8]

The Official Comment to § 505 conditions an arrestee's use of force upon the threat or use of force by the arresting officer which is both unlawful and deadly. The Definitions

7. Although appellee was intervening on behalf of another, § 506 of the justification statutes makes § 505 the operative statute in determining whether use of force is justifiable to protect a third party. Section 506 provides in pertinent part:
 § 505. Use of force for the protection of other persons
 (a) General rule.—The use of force upon or toward the person of another is justifiable to protect a third person when:
 (1) the actor would be justified under § 505 of this title (relating to use of force in self protection) in using such force to protect against the injury he believes to be threatened to the person he seeks to protect;
 (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
 (3) the actor believes that his intervention is necessary for the protection of such other person.
 The same rules, therefore, which apply to persons acting in self defense apply to persons acting in defense of others. For the sake of simplification, our analysis of the instant issue will not make continuous references to situations involving both self defense and defense of others.

8. Under the Statutory Construction Act, 1 Pa.C.S.A. § 1939, Official Comments may be consulted in the construction or application of the original provisions of the statute if the Comment was published or otherwise generally available prior to the consideration of the statute by the General Assembly. The Comment to § 505 was available to the General Assembly in 1967, five years before the Crimes Code was enacted. (See Comments to the proposed Crimes Code for Pennsylvania, Joint State Government Commission, Harrisburg, 1967, note to what was then section 304).

section of Chapter 5 of the Crimes Code defines "deadly force" as "Force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." Whether an arresting officer's use of such force is unlawful is determined with reference to § 508 of the Crimes Code, "Use of force in law enforcement." Section 508(a)(1) authorizes the use of deadly force by an arresting officer under the following circumstances:

(a)(1) [An arresting officer] is justified in using deadly force *only* when he believes [9] that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

(i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

(ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay (emphasis added).

An arresting officer using deadly force under the above-cited circumstances is doing an act for which the law provides a justification. Our Crimes Code "adopts the view that a principle of necessity, properly conceived, affords a general justification for conduct that otherwise would constitute an offense ...." *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985). Consequently, an arresting officer's use of deadly force to which a justification does not attach under § 508 is unlawful. Hence, under §§ 505 and 508 of the Crimes Code, an arrestee's use of force in self protection is justified when the arrestee reasonably believes that such force is immediately necessary to protect against an arresting officer's use of unlawful and deadly force, i.e., force which is readily capable of causing death or serious bodily injury. An arresting officer's use of excessive force capable of causing less than serious bodily injury or death can be vindicated by recourse to subsequent legal remedies. Superior Court's analysis of this

9. The Definitions section of Chapter 5 defines "believes" as reasonably believes.

issue was correct as far as it went; although that analysis stopped short of including a discussion of unlawfulness, the result reached by Superior Court was correct.[10]

■ Appellee's final issue on appeal involves the admissibility of pre-trial statements by police officers who were witnesses at trial. The statements in question were made in the course of a police Internal Affairs Division (IAD) investigation into the incident giving rise to the instant charges against appellee.[11] When defense counsel for appellee attempted to cross examine one of the officers as to any pre-trial statements he may have made, the prosecution objected, asserting that the IAD file was confidential material. The trial court conducted an in camera review of the IAD file and ruled that the Commonwealth was not required to produce the witnesses' statements contained therein. That the trial court erred in denying the defense access to the witnesses' statements in the IAD file is clear. "Relevant, pre-trial statements of witnesses in the possession of the Commonwealth must be made available to the accused, upon request, during trial." *Commonwealth v. Morris,* 444 Pa. 364, 366, 281 A.2d 851 (1971). Moreover, a determination of whether the statements of the prosecution witnesses would have been helpful to the defense is not to be made by the prosecution or the trial court. *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976). "Matters contained in a witness' statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness." *Id.,* at 466 Pa. 429, 353 A.2d 428.

Superior Court applied a harmless error analysis to the issue and held that determination of whether the error influ-

10. Although the trial court in this case properly instructed the jury on the level of excessive force which may trigger the right of self defense, i.e., deadly force, future jury instructions in cases such as this one should include the correlating element of the unlawful use of such force by the arresting officer.

11. Appellee's boyfriend filed a complaint with the IAD two days after the incident of October 17, 1987. The IAD conducted an investigation and resolved the matter in favor of the accused officers.

enced the jury should not be resolved on appeal without the benefit of first permitting defense counsel to view the statements in question with the eye of an advocate and to argue to the trial court their impeachment value. Accordingly, the case was remanded for an evidentiary hearing.

 Appellee argues that Superior Court erred in not granting her a new trial. We disagree. The defense is entitled to examine pre-trial statements of prosecution witnesses in order to have a fair opportunity to cross-examine those witnesses. See *Grayson, supra.* Consequently, denial of that right implicates the Confrontation Clause. A new trial is not required however, in every instance where there has been such a violation. The United States Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), recognized that a violation of the Confrontation Clause could constitute harmless error. See also *Commonwealth v. McGrogan,* 523 Pa. 614, 568 A.2d 924 (1990).

 The trial court's determination that the statements contained in the IAD file possessed no impeachment value was commented upon by Superior Court as follows.

The statements have been forwarded in sealed form to this court and made part of the record. Our inspection of them has led this court to conclude that the trial court's evaluation of the statements was correct, and that his failure to turn them over to defense counsel was harmless error. However, a reviewing court eyes evidence from a neutral stance and not from the perspective of a defense advocate. Therefore a remand is necessary.

Since defense counsel did not have the opportunity to examine the statements in question,[12] we agree with Superior Court

12. We strongly condemn the sealing of the record in this case. The Commonwealth's objection to admitting into evidence the witnesses' statements contained in the IAD file was based upon nothing but a bald assertion of privilege. The Commonwealth now argues in its brief to this Court that it is an open question in Pennsylvania whether statements to police internal affairs departments are privileged. There is no statutory or common law privilege upon which the Commonwealth can rely in making this argument. Maintaining public confidence, not only in police review procedures, but in the administration of the criminal

that such an opportunity should be provided. If it is determined by the trial court that the error was harmless, the judgment of sentence is affirmed; if the error is found not to be harmless, the judgment of sentence is to be vacated and a new trial granted.

The order of the Superior Court is affirmed.

McDERMOTT, J., joins this opinion and files a concurring opinion.

CAPPY, J., concurs in the result.

ZAPPALA, J., files a concurring and dissenting opinion.

McDERMOTT, Justice, concurring.

I join in the opinion of the majority. I wish, however, to express the following.

It is the duty of arresting authorities to arrest, and the duty of the citizenry to yield until their authority is determined. Reasonable force may be used by the authorities before, or during an arrest, but no force is ever justified after an arrestee has submitted; and there can be no defense for trained professional police to inflict their version of a penalty because of prior resistance. Thus, authorities are only empowered to use that reasonable force which is necessary to effectuate their legitimate purpose.

The instant case raises the question of when, if ever, resistance to that force is justified. The majority holds, and I agree, that one may be justified in resisting unnecessary and illegal force that is life threatening or capable of inflicting serious bodily harm. When such unnecessary force is used

justice system requires that the public not be denied its right to the information contained in court records. Public trials, so deeply ingrained in our jurisprudence, are mandated by Article I, Section 11 of the Constitution of this Commonwealth: "All courts shall be open." Similarly, Article I, Section 7 provides in pertinent part: "The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or *any branch of government* and no law shall ever be made to restrain the right thereof." (emphasis added). Public trials include public records.

one may use such force as appears necessary to protect life or limb and not be guilty of the offense of resisting arrest.

There is a distinction, however, between resisting arrest initially and thereby raising the level of police force necessary to effect arrest, and protecting oneself from initial or subsequent illegal force; and one may raise the level of necessary police force, by continued resistance, to a level which would be illegal force were it used initially. In other words, one cannot find justification, if by their own acts, they exacerbate what they are required to do peacefully into a dangerous condition for themselves and others; hence, one is never authorized to resist a legal arrest or profit by their resistance.

ZAPPALA, Justice, concurring and dissenting.

I dissent with respect to the majority's disposition of the issue of the justification defense and would adopt the rationale of the Dissenting Opinion of the Honorable Donald E. Wieand in resolving this issue. As to the second issue involving the admissibility of pre-trial statements by police officers who were witnesses at trial, I join the Majority Opinion.