J-A19016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.E.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y.E.A., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1591 MDA 2023 |

Appeal from the Dispositional Order Entered October 23, 2023
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-JV-0000266-2023

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 13, 2024**

Y.E.A., a minor, appeals from the dispositional order imposed following his adjudication of delinquency for aggravated assault – attempts to cause or causes bodily injury to a police officer ("aggravated assault") and obstructing administration of law or other governmental function ("obstruction").[1] We affirm.

The juvenile court summarized the evidence presented by the Commonwealth at the finding of fact hearing as follows:

> On May 23, 2023, [Hampden Township Police] Officer Rachel Mandrusiak [("Officer Mandrusiak")] was on patrol . . . when she performed a traffic stop on a gold-colored Mazda sedan. During the traffic stop, Officer Mandrusiak identified [Y.E.A.], then [sixteen] years old, as the driver of the vehicle. At that. time, Officer Mandrusiak did not believe that [Y.E.A.] had a valid driver's license to permit him to legally operate the vehicle. It should be

_____

[*] Former Justice specially assigned to the Superior Court.
[1] ***See*** 18 Pa.C.S.A. §§ 2702(a)(3), 5101.

noted that [Y.E.A.] was not pulled over on the side of the road but was parked in the parking lot of a local business.

Shortly after [Y.E.A.] was pulled over, [his] father and [nineteen-year-old] brother, M.A., both arrived on the scene. Their arrival led to Officer Mandrusiak calling for assistance, following which Officer Ernest Jenkins [("Officer Jenkins")] arrived to assist. M.A. and [Y.E.A.]'s father waited along the storefront while the officers checked their information in their computer system. Important to [the juvenile court's] opinion, and to understanding subsequent events, the officers discovered that M.A. had an active warrant for his arrest. Following this discovery, Officers Mandrusiak and Jenkins attempted to place M.A. in custody, prompting [Y.E.A.] to involve himself in the process, running over from his vehicle and approaching the officers. [Y.E.A.] was advised by the officers to step back.

M.A. . . . resisted placing his hands behind his back and attempted to pull away from the officers. In doing so, M.A. and the two officers fell off-balance, causing M.A. to collide with a glass door. [Y.E.A.] then grabbed at both officers, and attempted to pull them away from his brother. During the ensuing struggle, the [patrol vehicle's video recording ("MVR")] showed [Y.E.A.] appeared to have his hand or hands around Officer Jenkins' throat, causing Officer Jenkins to both shove [Y.E.A.] and to strike him to try and get him to release his grip. Notably, Officer Jenkins testified that he struck [Y.E.A.] because [he] had his hands around his head, neck and chest areas, and Officer Jenkins was worried that [Y.E.A.] might attempt to grab his firearm. [Y.E.A.] responded by striking Officer Jenkins in the head several times. Ultimately, both [Y.E.A.] and Officer Jenkins ended up on the ground in a struggle. Of note, [Y.E.A.]'s actions occurred over the vocal protests of both M.A. and their father. Eventually, the officers were able to regain control of the scene, subdue [Y.E.A.], and place him into custody. A few hours later, Officer Jenkins was transported to Penn State Health Hampden Medical Center to be treated for head injuries that he sustained during this incident.

The written allegation charging [Y.E.A.] was filed on June 2, 2023, and the petition alleging delinquency was filed on June 6, 2023. . . . The finding of fact hearing was held on October 5, 2023. . . .

Juvenile Court Opinion, 12/21/23, at 2-4 (footnotes omitted).

The juvenile court conducted a finding of fact hearing on October 5, 2023. The Commonwealth showed both officers' body-worn camera videos and the MVR which captured the incident depicting Y.E.A. repeatedly striking Officer Jenkins. *See* N.T., Finding of Fact Hearing, 10/5/23, at 14, 17; *see also* Commonwealth Exhibits 1, 2, 3. On direct examination of Officer Jenkins, the Commonwealth also introduced pictures of his injuries, and the Penn State Health Hampden Medical Center record ("medical record") summarizing his hospital visit, treatment, and diagnosis. *See* N.T., 10/5/23, at 17-18; *see also* Commonwealth Exhibits 4, 5. Y.E.A.'s counsel objected to the medical record as impermissible hearsay, arguing that the Commonwealth did not properly authenticate it. *See* N.T., 10/5/23, at 18. Over defense counsel's hearsay objection, the juvenile court admitted the medical record, finding that it was kept in the normal course of business and satisfied the business records exception to the hearsay rule. *See id*. at 19.

Y.E.A. then testified on his own behalf and sought to invoke a defense of justification. He claimed that he intervened because he believed his brother was at risk of serious injury. *See id*. at 27. The juvenile court rejected Y.E.A.'s justification defense, finding the defense was not applicable when the other actor is a public officer performing his duties. *See id*. at 37.

The juvenile court

found beyond a reasonable doubt that [Y.E.A.] committed the offenses with which he had been charged. . . . Ultimately, on October 23, 2023, [the juvenile] court did adjudicate [Y.E.A.] as delinquent on the charges of aggravated assault and obstruction.

- 3 -

> Following that adjudication, in relevant part, [the juvenile] court placed [Y.E.A.] on probation, and ordered that he remain on electronic monitoring pending further order of court. . . .

Juvenile Court Opinion, 12/21/23 at 5.

Y.E.A. did not file a post-dispositional motion. On November 21, 2023, this timely notice of appeal followed. Both Y.E.A. and the juvenile court complied with Pa.R.A.P. 1925.

Y.E.A. raises the following issues for our review:

1. Did the [juvenile] court err in allowing the admission of an unauthenticated medical record; and was the record relied upon inadmissible hearsay?

2. Did the [juvenile] court err in that it failed to consider offer of defense justification where sufficient facts on the record showed [Y.E.A.] intervened for the physical safety of a sibling?

Y.E.A.'s Brief at 9.[2]

In his first issue, Y.E.A. asserts that the juvenile court improperly admitted Officer Jenkins' medical record because it did not meet the admissibility requirements of the business records exception to the rule against hearsay. *See id*. at 16.

We begin by noting that, "[t]he Juvenile Act[3] grants juvenile courts broad discretion when determining an appropriate disposition. . . . We will

---

[2] Y.E.A.'s Rule 1925(b) statement also included a claim that the Commonwealth failed to provide sufficient evidence to prove all elements of the charges of aggravated assault and obstruction beyond a reasonable doubt. However, on appeal he now concedes that the evidence was "incontrovertible." Y.E.A.'s Brief at 38.

[3] *See* 42 Pa.C.S.A. §§ 6301-6375.

- 4 -

disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted and footnote added). Moreover, it is clear that "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." *In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004).

We review juvenile court rulings on the admissibility of evidence for an abuse of discretion. *See Interest of D.J.K.*, 303 A.3d 499, 504 (Pa. Super. 2023). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id*.

The Pennsylvania "[R]ules of [E]vidence govern proceedings in all courts of the Commonwealth of Pennsylvania's Unified Judicial System, except as otherwise provided by law." Pa.R.E. 101(a). As noted by this Court: "Juvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings." *Commonwealth v. Hale*, 85 A.3d 570, 584 (Pa. Super. 2014) (citations and quotation marks omitted). "[J]uvenile hearings [are] non-adversarial, informal proceedings, where the strict rules of evidence and procedure [are] relaxed and . . . the judge could analyze the child's needs and fashion the best possible remedy." *Id*. (citations omitted).

Hearsay is "a statement that the declarant does not make while testifying at the current trial . . . and . . . a party offers in evidence to prove

the truth of the matter asserted." Pa.R.E. 801(c)(1), (2). Hearsay is inadmissible. *See* Pa.R.E. 802.

Pennsylvania Rule of Evidence 803(6) provides:

> **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6)(A)-(E).

Pennsylvania Rule of Evidence 902, in turn, provides that certain evidence is self-authenticating and requires no extrinsic evidence of authenticity to be admitted. Subsection (11) of that Rule includes the following evidence:

> **Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. . . . 76. Before the trial or hearing, the proponent must give an adverse party reasonable written notice

of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.

Pa.R.E. 902(11).

Under Pennsylvania law, "[m]edical records are admissible under the hearsay rules as evidence of facts contained therein but not as evidence of medical opinion or diagnosis." *Folger ex rel. Folger v. Dugan*, 876 A.2d 1049, 1055 (Pa. Super. 2005) ("*Folger*") (citations omitted). "Under this exception, hospital records have been admitted to show the fact of hospitalization, treatment prescribed and symptoms found." *Commonwealth v. Xiong*, 630 A.2d 446, 451 (Pa. Super. 1993) (*en banc*) (citations omitted). A "party may introduce medical records [with such facts] without producing the person who made . . . the record or the records custodian. Anyone with sufficient knowledge of the identity, preparation and maintenance of the record may authenticate them." *Folger*, 876 A.2d at 1056.

However,

[o]pinion evidence contained in hospital records . . . is not admissible. "The rationale for excluding medical opinion in hospital records lies in the fact that such evidence is expert testimony and is 'not admissible unless the doctor who prepared the report is available for in[-]court cross-examination regarding the accuracy, reliability and veracity of his opinion.'"

*Xiong*, 630 A.2d at 451 (citations omitted). Thus, a medical opinion or diagnosis cannot be presented without the testimony of the person who made

the opinion or diagnosis or the records custodian. *See Xiong*, 630 A.2d at 452.

The Medical Records Act[4] allows the presentation of certified copies of medical records in legal proceedings without preliminary testimony establishing their foundation, identity, and authenticity. *See id*. at 731 (*citing* 42 Pa.C.S.A. § 6151). The custodian of the record or an employee of the health care facility responsible for the original document must certify the copy. *See* 42 Pa.C.S.A. § 6151. The custodian of the records must sign the certification before a notary public and must include specific details such as the patient's name, medical record number, and a statement that the copy is a true and complete reproduction of the original record. *See* 42 Pa.C.S.A. § 6152(d).

Y.E.A. argues on appeal that the juvenile court erred in admitting Officer Jenkins' unauthenticated medical record. Y.E.A. asserts the Commonwealth did not present the custodian of the record to testify to the medical record as a business record under Rule of Evidence 803(6) or provide the defense with a certification complying with Rule 902(11) before the hearing. *See* Y.E.A.'s Brief at 16-19. Additionally, Y.E.A. avers that the juvenile court improperly interpreted the law allowing admission of the medical record under the business record exception to the hearsay rules. *See id*.

---

[4] *See* 42 Pa.C.S.A. §§ 6151-6160.

The Commonwealth responds that the juvenile court properly admitted Officer Jenkins' medical record under the business records exception to show the fact of his hospitalization, treatment, and symptoms. The Commonwealth further asserts that Officer Jenkins "was more than qualified to authenticate the medical record summary." Commonwealth's Brief at 12. In the alternative, the Commonwealth maintains that if this Court finds that the juvenile court erred in admitting the medical record, the decision was harmless as it did not impact the outcome of the case. *See id*. at 14-15.

The juvenile court found that it properly admitted the medical record pursuant to the business records exception to the hearsay exclusion rule. Furthermore, the juvenile court noted that it admitted the medical record to show Officer Jenkins sought medical treatment for his injuries. The medical record noted that Officer Jenkins experienced symptoms of dizziness, nausea, and tiredness, and the treatment prescribed for his symptoms, including "concussion management." *See* Trial Court Opinion, 12/21/23 at 9.

The Commonwealth, however, presented no testimony from any source to qualify the medical record under the business records exception. *See* N.T., 10/5/23 at 19-20. Instead, the custodian of the record or an authorized employee of the health care facility where the record was kept should have certified the record. *See* 42 Pa.C.S.A. §§ 6152(d), 6151. Likewise, there was no evidence in the record that the Commonwealth certified Officer Jenkins' medical record with testimony from its custodian or other qualified person or a certification pursuant to Pa.R.E. 902(11). *See* Pa.R.E. 803(6)(D).

We therefore conclude that the Commonwealth could not introduce the medical record into evidence as a business record, under Pa.R.E. 803(6), absent qualifying testimony from any witness, custodial or otherwise, or without proper certification pursuant to Pa.R.E. 902(11). Thus, the juvenile court erred in ruling Officer Jenkins' medical record admissible under the business records exception to the hearsay rule.

However, we further conclude the juvenile court's ruling was harmless error. *See Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006) (explaining that "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error is harmless").

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one.

*Commonwealth v. Thornton*, 431 A.2d 248, 266 (Pa. 1981) (citation, quotation marks and brackets omitted).

The "burden of establishing that an error is harmless beyond a reasonable doubt rests with the Commonwealth." *Commonwealth v. Rush*, 605 A.2d 792, 794 (Pa. 1992). "[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison *that it is clear beyond a reasonable doubt that the error could not have contributed to the*

***verdict***." ***Commonwealth v. Story***, 383 A.2d 155, 166 (Pa. 1978) (emphasis added).

A person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers . . . enumerated in subsection (c), in the performance of duty." 18 Pa.C.S.A. § 2702(a)(3). A police officer is an enumerated person as defined in subsection (c). ***See*** 18 Pa.C.S.A. § 2703(c).

The Crimes Code defines the term "bodily injury" as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. However, "in a prosecution for aggravated assault on a police officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an ***attempt*** to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." ***Commonwealth v. Brown***, 23 A.3d 544, 560 (Pa. Super. 2011) (*en banc*) (citation omitted and emphasis in original).

Y.E.A. does not dispute that he caused Officer Jenkins' injuries but argues that the Commonwealth improperly presented Officer Jenkins as the witness certifying his medical record. However, Y.E.A. does not even argue that the admission of the medical record prejudiced him.

In this case, Officer Jenkins testified that he responded to assist Officer Mandrusiak. In performing his duties, Officer Jenkins attempted to place M.A. under arrest, but Y.E.A. struck him multiple times, injuring him. This evidence

- 11 -

alone allowed the juvenile court to conclude beyond a reasonable doubt that Y.E.A. interfered with the arrest of M.A., causing Officer Jenkins bodily injury while performing his duties. Furthermore, the Commonwealth presented videos of the incident and pictures of the officer's injuries. Thus, the other, properly admitted evidence — even without the presentation of the medical record — would have been sufficient to establish the elements of aggravated assault. **See Story**, 383 A.2d at 166.

Upon our review of the record, we agree with the Commonwealth that the juvenile court's admission of Officer Jenkins' medical record resulted in harmless error. The admission of Officer Jenkins' medical record did not prejudice Y.E.A. because the charges against him did not require medical proof of specific harm. Additionally, the medical record was merely cumulative of Officer Jenkins' uncontradicted testimony that Y.E.A. struck him multiple times as he attempted to take M.A. into custody. Officer Jenkins testified that he suffered numerous injuries, including a cut lip, scraped elbow, and a concussion. Furthermore, the Commonwealth presented pictures depicting Officer Jenkins' lip and bloody elbow, and videos showing Y.E.A. repeatedly striking Officer Jenkins.

After the Commonwealth's introduction of the medical record, neither the parties nor the court mentioned it any further. Therefore, we conclude that although the juvenile court erroneously admitted the medical record under Rules 803(6) and 902(11), the Commonwealth presented overwhelming evidence of Y.E.A.'s delinquent acts. The admission of the medical record did

not contribute to the juvenile court's adjudication of Y.E.A., and thus any error was harmless. *See Mitchell*, 902 A.2d at 452, 457. For all of these reasons, Y.E.A.'s first issue does not merit relief.

In his second issue, Y.E.A. contends that the juvenile court erred by rejecting his justification defense. We review a trial court's ruling on an offer of proof on the defense of justification for an abuse of discretion or error of law. *See Commonwealth v. Capitolo*, 498 A.2d 806, 810 (Pa. 1985). Furthermore, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005). The trial court as factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." *Commonwealth v. Salinas*, 307 A.3d 790, 793 (Pa. Super. 2023).

Our Crimes Code defines the defense of "justification" as follows:

**(a) General rule.** — Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S.A. § 503(a)(1)-(3).

Our Supreme Court has interpreted these elements as requiring:

1. that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

2. that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm[;]

3. that there is no legal alternative which will be effective in abating the harm; and[ ]

4. that the Legislature has not acted to preclude the defense by clear and deliberate choice regarding the values at issue.

**Commonwealth v.Manera**, 827 A.2d 482, 484 (Pa. Super. 2003) (*quoting*

**Capitolo**, 498 A.2d at 809).

Under Pennsylvania's justification statute, "use of force is not justifiable . . . to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful . . .." 18 Pa.C.S.A. § 505(b)(1)(i). Justification is an affirmative defense, and the defendant bears the burden of providing an appropriate offer of proof in order to be entitled to a jury instruction on justification. **See Manera**, 827 A.2d at 485 n.7.

"Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense." **Capitolo**, 498 A.2d at 809. Furthermore, "a defendant may not rely solely on the existence of a legal

- 14 -

alternative; rather, the defendant must also prove that he took only the *minimum* action necessary to avoid the harm." ***Commonwealth v. Clouser***, 998 A.2d 656, 660 (Pa. Super. 2010) (emphasis in original).

Instantly, Y.E.A. concedes the Commonwealth met its burden of presenting evidence establishing the charge of aggravated assault. ***See*** Y.E.A.'s Brief at 38. Instead, Y.E.A. argues "[c]ounsel for Y.E.A. provided sufficient evidence of a justification defense" under section 503(a)(1). ***Id***. at 29. He claims "that the harm he sought to prevent was that of potential serious bodily injury [to] his brother[, M.A. who was] under the control of [Officers Mandrusiak and Jenkins and] was thrown, face first, against a plate glass door/window." ***Id***. at 29-30.

The Commonwealth counters that Y.E.A.'s argument fails because he did not present sufficient evidence demonstrating his entitlement to the defense.

The juvenile court addressed and rejected Y.E.A.'s claim in its opinion: "Here, [Y.E.A.] failed all four prongs of the ***Capitolo*** justification test, and therefore was not entitled to consideration of that defense." Juvenile Court Opinion, 12/21/23, at 14.

Upon review we determine the record supports the juvenile court's reasoning and is free of legal error. As the juvenile court aptly concluded:

> First, the record was clear that there was, at most, only a debatable or speculative harm to M.A. prior to [Y.E.A.] intervening in the arrest. The harm cited by [Y.E.A.] was that he believed his brother would be seriously injured after M.A. bounced against a glass door while struggling with Officers Jenkins and Mandrusiak.

- 15 -

Notably, neither officer struck M.A., neither officer drew any weapons, nor did either officer in any way give an indication that they wished to do anything other than take M.A. into custody on a valid warrant. Further, Officer Mandrusiak testified that she was pushed into the glass door first, as M.A. attempted to pull away. As such, there was no clear or imminent harm that [Y.E.A.] acted to avert, and therefore [Y.E.A.] failed the first prong of the **Capitolo** test.

Regarding the second prong of the **Capitolo** test, [Y.E.A.] presented no credible evidence whatsoever that he had a reasonable belief that striking Officer Jenkins and wrestling to the ground with him would avert any perceived threat to his brother. "Because the harm must be real, and not an imagined, speculative, or non-imminent harm, the actions taken to avoid the harm must support a reasonable belief or inference that the actions would be effective in avoiding or alleviating the impending harm." **Capitolo**, . . . 498 A.2d at 809. "[A]n arrestee's use of force in self[-]protection . . . is justified when the arrestee reasonably believes that such force is immediately necessary to protect against an arresting officer's use of unlawful and deadly force, i.e., force which is readily capable of causing death or serios bodily injury." **Commonwealth v. French**, . . . , 611 A.2d 175, 179 ([Pa.] 1992). "An arresting officer's use of excessive force capable of causing less than serious bodily injury or death **can be vindicated by recourse to subsequent legal remedies**." **Id**. . . .

At the time [Y.E.A.] intervened in this incident, the officers were struggling to maintain control of his brother. Because the situation was in flux, [Y.E.A.]'s intervention and assault upon Officer Jenkins, rather than avoiding any harm, could only serve to destabilize the scene and **increase** the risk of a greater harm occurring. While [Y.E.A.] testified that he intervened because he believed his brother was about to be seriously injured, a review of the video recordings of this incident does not support that conclusion. Instead, as M.A. attempted to pull away from the officers, both he and Officer Mandrusiak slammed against the glass door, prompting [Y.E.A.] to become involved. There was no use of force or threat of force by the officers, let alone an excessive use of force by the officers, let alone a threat or use of deadly force justifying the use of force in self-defense. **Compare French**, **supra**. As such, [Y.E.A.] failed to present credible

evidence that his actions were reasonably calculated to avert any harm, and he must fail the second prong of the *Capitolo* test.

Similarly, [Y.E.A.] failed to present any credible evidence whatsoever regarding the third prong of the *Capitolo* test; specifically, he failed to demonstrate that there was no legal alternative available to abate the harm. Here, the facts clearly demonstrate that M.A. was initially unwilling to be arrested, and [Y.E.A.] injected himself into that situation by grappling with both of the officers, and striking Officer Jenkins in an effort to prevent that arrest. The video recordings of this incident clearly demonstrate that [Y.E.A.]'s objective was to prevent his brother's arrest, and not to prevent M.A.'s death or serious bodily injury. *Compare Commonwealth v. French*, . . . 578 A.2d [1292,] 1298 [(Pa. Super. 1990)] ([stating] "[f]orce is justified only in the face of a threat of serious bodily injury or death. To sanction a lesser standard would encourage unnecessary violence and invite the kind of escalating retaliatory conduct which this case dramatically demonstrates . . .")[.] Further, [Y.E.A.] failed to present any evidence that his actions of grappling with the officers, striking Officer Jenkins, and wrestling with Officer Jenkins on the ground were the minimum actions necessary to prevent harm to his brother. *Compare Clouser*, [998 A.2d at 660.] . . .. As such, [Y.E.A.] failed the third prong of the *Capitolo* test.

Finally, regarding the fourth prong of the *Capitolo* test, limitations on justification as established by the legislature, 18 Pa. C.S.[A.] §[ ]505(b)(1)(i) is applicable; "[t]he use of force is not justifiable under this section: (i) to resist arrest which the actor knows is being made by a peace officer, although the arrest is - unlawful[.]" The Comment to this subsection specifically states, in relevant part, that force may be used to resist arrest if the arresting police officer *unlawfully* uses or threatens deadly force.

Here, there was no threat or use of deadly force, and there was a lawful, rather than unlawful arrest. M.A. attempted to pull away from Officers Mandrusiak and Jenkins, then both M.A. and Officer Mandrusiak ended up impacting the glass door in the ensuing scuffle, with [Y.E.A.] then entering the fray by grappling with Officer Jenkins and striking him. Therefore, because there was a lawful arrest in progress and there was no threat or use of deadly force, [Y.E.A.] was not entitled to consideration of a justification defense.

Juvenile Court Opinion, 12/21/23, at 14-17 (footnotes omitted and emphasis in original).

We conclude the juvenile court did not err or abuse its discretion in finding that Y.E.A. failed to present sufficient evidence to support his invocation of a justification defense. **See Capitolo**, 498 A.2d at 809. Accordingly, we determine no relief is due on this claim. We affirm the dispositional order.

Dispositional order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2024